# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 7631 | **DATE** | 12/2/2004 |
| **CASE TITLE** | Credit Suisse First Boston vs. Vender et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER ORDER. For the reasons stated in the attached memorandum opinion and order, plaintiff CSFB's motion for a temporary restraining order ("TRO") is granted in part and denied in part. Until and including December 12, 2004, defendants are prohibited from soliciting CSFB clients or employees, but will not be enjoined from performing securities brokerage services for Jefferies & Co., Inc. during this time as long as they refrain from further solicitation of their former customers and co-employees. Plaintiff shall post a bond in the amount of $250,000 before noon on December 3, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| X | Notified counsel by telephone. | | DEC 0 3 2004 date docketed | 6 |
| | Docketing to mail notices. | | J XM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CREDIT SUISSE FIRST BOSTON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 04 C 7631 |
| | ) | |
| SCOTT VENDER, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

DOCKETED
DEC 3 2004

## MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER

Before this court is the motion of Credit Suisse First Boston, LLC ("CSFB") for a temporary restraining order against defendants Scott Vender, William Thoms and Roger Veome. For the reasons set forth herein, the motion is granted in part and denied in part.

## I. BACKGROUND

Defendants are securities brokers who were formerly employees of CSFB but who now work for Jefferies & Co., Inc. ("Jefferies"), a competing firm. Each defendant was working for Donaldson, Lufkin & Jenrette, Inc. ("DLJ") when that firm merged with CSFB in 2000. During the course of the merger, each defendant entered into a loan agreement with CSFB whereby CSFB provided defendants with a combined total of $885,000 and agreed to forgive each loan if the recipient remained an employee of CSFB through July 1, 2004. The agreement also required that defendants provide 30 days' notice of intent to terminate employment and prohibited their engaging in "competitive activity" or "solicitation" for an additional 30 day period following termination. Competitive activity is broadly defined by the agreement to prohibit any affiliation with any other business entity that is engaged in the same activities as CSFB, and the prohibition on solicitation in the agreement forbids "enticing away" both CSFB employees and clients.

Defendants terminated their employment with CSFB on November 19, 2004 without

-1-



providing the required 30 day notice and began employment with Jefferies. Around this time, defendants began sending out materials to CSFB clients with whom they had relationships. These packages included forms enabling the clients to transfer their accounts to Jefferies. CSFB brought this motion on November 29, 2004, seeking a temporary restraining order ("TRO"), pending arbitration, barring defendants from competing with CSFB by, among other things, doing work independently or on behalf of another firm that competes with CSFB, soliciting employees of CSFB, soliciting clients of CSFB or otherwise making use of CSFB client lists.

## II. ANALYSIS

A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, the court must weigh these factors along with any irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied. *Id.* Finally, the court must consider the public interest served by granting or denying the injunction, including the effects of the injunction on non-parties. *Id.*

CSFB argues that this is a simple case of breach of a clear non-compete agreement by former employees for which injunctive relief should issue. Defendants respond that the TRO should not issue because certain provisions of the agreement are unenforceable under Illinois law and because CSFB possesses an adequate remedy at law for breach of the agreement.[1]

---

[1] Defendants set forth additional arguments in their papers that were denied for the reasons stated in open court at the November 30, 2004 TRO hearing and are not addressed here.

A.  **Likelihood of Success.**

The parties do not appear to dispute that defendants' termination of employment without notice, immediate commencement of employment with a competitor and solicitation of their former clients violated the terms of their agreements with CSFB. Rather, defendants maintain that CSFB has failed to demonstrate a protectible interest sufficient to enforce a restrictive covenant under Illinois law. Employers have protectible business interests in their clients that justify enforcement of restrictive covenants only when 1) by the nature of the business, the customer relationship is near-permanent and longstanding; and 2) but for his or her association with the employer, the employee would not have contact with the clients. *Nationwide Advertising Service, Inc. v. Kolar*, 28 Ill. App. 3d 671, 673, 329 N.E.2d 300 (1st Dist. 1975). Defendants maintain that they do not intend to contact clients with whom they would not have had a relationship "but for" CSFB, but are focusing instead on clients with whom defendants developed relationships on their own, and who did not have a longstanding relationship with CSFB.

This argument fails at the TRO stage. As an initial matter, CSFB presumably has a claim to the clients with whom defendants were working at DLJ, as CSFB is DLJ's successor-in-interest. CSFB will likely be able to show a longstanding relationship with its clients, as "a near-permanent relationship with clients is inherent in the provision of professional services[.]" *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 142, 685 N.E.2d 434 (2d Dist. 1997). In addition, the court credits CSFB's contention that its resources and goodwill were necessary to support and enable defendants' relationship with their clients. Without the investment of the employer in office resources, prestige, insurance, back room support and research capabilities no broker could operate effectively – *i.e.*, it is unlikely that each defendants' client relationships could have been initiated and sustained had defendants been operating out of Vender's garage. *See,*

*e.g., Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 668 (7th Cir. 1999). The court concludes that CSFB has some likelihood of success in demonstrating an adequate business interest with respect to the customers in question.

Defendants also maintain that the 60 day time period during which the restrictions in the agreement are imposed on defendants is unreasonable. With limited exceptions described below, the court disagrees. Courts have routinely upheld restrictive covenants of much longer duration. *See, e.g., Business Records Corp. v. Lueth*, 981 F.2d 957 (7th Cir. 1992) (upholding two year restriction). The 60 day restricted period provides CSFB with an opportunity to cement its relationships with the customers formerly serviced by defendants while defendants are still employed (and presumably with their reasonable cooperation) and to continue to work with the clients for an additional 30 days after the defendants' departure without having to deal with competition from their former employees. However, the court finds the agreement's 60 day prohibition on "any affiliation" with a competitor, defined as "any direct or indirect interest" with the competitor as an employee, consultant, promoter, agent, or otherwise, is unreasonable. This prohibition means that, until the entire 60 day non-compete period expires, a broker who wishes to leave CSFB is barred from arranging for employment with a competing firm, even for the period *after* his non-compete period expires. Few rational actors with any choice will leave one job without assurance of another. More important, CSFB's broad prohibition on "affiliation" is unnecessary to serve CSFB's legitimate interest in preventing its former employees from soliciting its customers or competing with it for 60 days. In short, the blanket prohibition on *any* affiliation contemplated by the loan agreement unreasonably restricts an employee's freedom to seek employment of his or her choice. *See, e.g., Sheehy v. Sheehy*, 299 Ill. App. 3d 996, 1007, 702 N.E.2d 200 (1st Dist. 1998) ("Although defendant is not ... competing with [plaintiff], plaintiff still seeks to restrain his employment. In our view, such

restriction is unreasonable and a violation of public policy."). Therefore, the court finds that, while CSFB has some likelihood of success in enforcing the 60 day non-solicitation provision and the prohibition on going to work for a competing firm, it has failed to meet that burden with respect to the broad non-affiliation portion of the non-compete restriction.

Finally, defendants argue that because CSFB is a member of the National Association of Securities Dealers ("NASD"), a private organization providing regulatory services to the securities industry, and the NASD requires mandatory arbitration, likelihood of success for TRO purposes means likelihood of success in front of the NASD. This argument fails. A court's determination of likelihood of success for purposes of preliminary injunctive relief is a determination of the probable success of the movant's claims *at trial. See Abbott Labs.*, 971 F.2d at 13. Even if this were not the case, the court is ill-equipped to speculate as to the result of a private arbitration.

The court therefore finds that CSFB has made its threshold showing with respect to likelihood of success as to the non-solicitation and portions of the non-compete provisions of the agreement.[2]

### B.     Irreparable Harm and Adequate Remedy at Law.

CSFB maintains that it will be irreparably harmed by defendants' actions in a loss of CSFB's goodwill, competitive position and continuity of its business relationships, citing *Prentice Medical Corp. v. Todd*, 145 Ill. App. 3d 692, 495 N.E.2d 1044, 1050-51 (1st Dist. 1986), and that such harm cannot be readily calculated and cured by a subsequent award of monetary damages. Defendants acknowledge that courts in Illinois and elsewhere have found loss to goodwill and competitive position to be irreparable, but argue that the solicitation of a discrete, identifiable number of clients

---

[2] The court does not consider CSFB's claim that its client lists constitute protectible trade secrets as it has already articulated interests sufficient to support the issuance of the TRO prohibiting solicitation of its clients.

in a heavily-regulated industry where clients routinely transfer accounts is an injury susceptible to quantification. *See Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1376 (N.D. Ga. 2001) (finding under Georgia law that a claim of irreparable injury due to loss of business momentum is "unrealistic" in the securities field). However, the *Frisby* holding appears to be at odds with general principles of Illinois law as well as with holdings in the Fourth Circuit and other districts. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985); *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 919 F. Supp. 1047 (E.D. Ky. 1994). The court declines to follow it.

The court must also consider the potential for irreparable harm based on the impact defendants' actions could have in encouraging other CSFB employees, as well as the competitors who are tempted to employ them, to engage in similar behavior. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin*, No. 91 C 2324, 1991 WL 83163 (N.D. Ill. May 9, 1991). Defendants do not address this argument directly, but the affidavit submitted by Vender in support of defendants' opposition papers does not undermine it. *See* Nov. 22, 2004 Vender Aff. at ¶ 10 (alleging that the loan agreement was motivated by CSFB's "vested interest in preventing a mass exodus of talented brokers ... taking their books of business with them."). For these reasons, the court finds that CSFB has also made its threshold showing of irreparable harm and inadequate remedy at law.

### C. Balance of Harms and Public Interest.

There can be no question that enjoining defendants from soliciting their former customers will injure defendants in their ability to make a living for the duration of the injunction; defendants work by commission and are unlikely to be able to work very successfully in the near future at their new firm if they cannot call on their former clients. Moreover, enjoining defendants from soliciting

their former customers may potentially injure those former customers, third parties as to this dispute. The former customers of defendants will be injured if they cannot reach the broker with whom they wish to deal, particularly given that CSFB can be expected strategically to withhold the defendants' new contact information. Given the limited period for which a TRO is effective, however, the court finds that CSFB's interests outweigh these competing interests and support the entry of a temporary restraining order.

The court finds that CSFB has also articulated a sufficient interest in avoiding having its remaining employees "enticed away" by defendants to temporarily enjoin solicitation of CSFB employees. However, CSFB has failed to prove that the employees who have already joined defendants did so as a result of defendants' solicitation, and the court accordingly will not attempt to compel employees who have already left CSFB to leave their current employment. Going forward, defendants are enjoined from soliciting CSFB employees to leave CSFB's employ.

With respect to CSFB's request that the court enforce the non-competition provision of the agreement, the court, in the particular circumstances of this case, declines to do so. The non-affiliation portion of the non-compete agreement which the court discussed above unreasonably burdened the defendants' ability to seek alternative employment. As the court reads the agreement, the defendants would have breached the agreement if they had entered into an agreement to join Jeffries at the expiration of the non-compete period, even if they had scrupulously followed the non-solicitation provision and the remainder of the non-compete provision during the restricted period. Thus, defendants were faced with an unavoidable conflict between seeking alternative employment and complying with the agreement. The fact that they chose to violate the agreement in a manner more rather than less damaging to CSFB does not obviate the fact that the agreement gave them no reasonable way to avoid violating it while protecting their own legitimate interests in seeking

alternative employment. The court does not believe that in these circumstances, compelling defendants to leave Jeffries for the limited period of the temporary restraining order is appropriate.

### III. CONCLUSION

For the foregoing reasons, CSFB's motion for a temporary restraining order is granted in part and denied in part. Until and including December 12, 2004, defendants are prohibited from soliciting CSFB clients or employees. Defendants will not, however, be enjoined from performing securities brokerage services for Jefferies & Co., Inc. as long as they refrain from further solicitation of their former customers and co-employees. Plaintiff shall post a bond in the amount of $250,000 before noon on December 3, 2004.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 2, 2004 at 3:45 p.m.